J-A20034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :
            v.                     :
                                    :
NIKOLAOS HATZIEFSTATHIOU      :
                                    :
           Appellant           :    No. 2590 EDA 2021

Appeal from the Judgment of Sentence Entered November 24, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005279-2019

BEFORE: STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED SEPTEMBER 15, 2022**

Nikolaos Hatziefstathiou (Appellant) appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County (trial court) after a jury found him guilty of tampering with public records or information, forgery (two counts), identity theft (two counts) and unsworn falsification (three counts).[1] After review, we affirm.

**I.**

This case arose out of a prior criminal case in which Appellant was placed on probation after pleading guilty to false reports and harassment. In that case, Appellant harassed his neighbor by sending escorts to the neighbor's

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 4911(a)(2), 4101(a)(1) and (a)(3), 4120(a) and 4904(a)(2).

home and then calling 911 to report suspicious activity. Apparently unhappy with how he was treated while on supervision, Appellant sought to get back at the county while at the same time boosting both his profile as a journalist and that of his online news website called "YC News."

Appellant's conduct began in April 2019 when he sent a series of emails to the Delaware County District Attorney's Office (DAO). In the emails, Appellant sought comment about an allegedly forthcoming report from YC News about a "decades long scheme" among Delaware County officials engaging in various forms of illegal behavior. After getting no real response from the DAO, Appellant shifted his strategy by creating Microsoft Outlook email accounts for two established journalists from ABC News and the New York Times, both of whom later testified at trial. While pretending to be the journalists, Appellant sent another barrage of emails seeking comment not only about the allegedly forthcoming report from YC News, but also about an alleged audio recording in which a police detective harassed Appellant. When the DAO alerted the Delaware County Criminal Investigative Division (CID) about the emails, Detective Edmund Pisani (Detective Pisani) contacted the journalists and confirmed that they did not send them. Detective Pisani also applied for and obtained a search warrant for Microsoft to provide records for the email accounts. Upon receiving those records, Detective Pisani discovered that the fake email accounts for the journalists originated from Appellant's home IP address.

The next month, Appellant's strategy shifted to concocting a news story about a Delaware County probation supervisor sending a racist email. The story was titled, "Racist high-ranking official tells friend he'll have 'airtight job security so long as there's [n------] in town." The story alleged that YC News had obtained an email sent in 2015 by a "high-ranking" probation supervisor to several other county officials about an individual intending to apply to the department but being told they would need to change their political party registration. According to the story, YC News had obtained the email from a probationer that was "accidentally carbon copied" to the email.

The email, as it appeared in the news story, read as follows:



Commonwealth's Exhibit 37 (epithet redacted; other redactions in original).

After the story was posted, the Delaware County IT Department searched its servers to determine if the email was genuine. To do this, they searched for any emails that contained the same terms used in the offensive email. When searching for emails containing the "n" word, there were over 3,000 results, although this included anytime the word was mentioned in a court transcript. However, when the additional search term "gangbangs" was added to the search, the IT Department found no results.

Not long after, CID obtained a search warrant for Appellant's home. While searching his bedroom, CID discovered a paper copy of an email sent by a probation supervisor in the prior case that appeared to serve as the template for the email in the YC News story. CID also seized Appellant's cell phone and laptop from the car that Appellant was driving. After doing so, CID conducted a forensic examination of the devices. That examination revealed that Appellant's laptop was used not only to create the fake email accounts for the journalists, but also to alter the email from the prior case to create the racist email posted in the news story.

Appellant was charged with the offenses mentioned above and went to trial in October 2021. While Appellant did not testify, his defense counsel conceded that Appellant sent the emails posing as the journalists but argued that his doing so constituted neither identity theft nor unsworn falsification. As for the altered email, defense counsel conceded that Appellant's laptop was used to create the email but disputed that the Commonwealth proved it was

Appellant who did so. However, even if Appellant altered the email, defense counsel asked the jury to infer that the YC News story was true: that a probationer inadvertently received a racist email from a probation supervisor and served as the source for the news story. Under this theory, Appellant then merely created the email to serve as an illustration for the news story to show how the email would have looked.

The jury found Appellant guilty of all charges, and the trial court sentenced him to an aggregate two to four years' imprisonment with a consecutive five years' probation. He did not file any post-sentence motions but timely appealed. While his statement of the questions involved raises twelve issues, Appellant raises five principal issues in the argument section of his brief. He asserts that the trial court (1) improperly allowed prior bad acts evidence; (2) violated his right to a public trial; (3) improperly admitted evidence obtained without a warrant; (4) barred him from introducing evidence about the IT Department's search of emails; and (5) imposed an unduly harsh sentence.[2]

_____

[2] In his statement of the questions involved section of his brief, Appellant challenges the sufficiency of the evidence for his forgery conviction and a separate claim alleging that he was barred from introducing evidence that other uncharged persons invoked their right against self-incrimination. *See* Appellant's Brief at 7-9. These issues are waived because Appellant provides no substantive argument in his brief for these issues. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief."); *see also* Pa.R.A.P. 2119(b).

## II. Prior Bad Acts Evidence

Appellant first contends that the trial court erred in allowing the Commonwealth to admit evidence that he used the "n" word during the commission of his prior case. He advances two arguments for relief on this issue. First, he challenges the pretrial ruling that the evidence was admissible under Pa.R.E. 404(b), arguing that any relevance the evidence had for a permissible other purpose was outweighed by its potential for unfair prejudice. Second, he argues that the Commonwealth used inadmissible hearsay to prove that he uttered the slur. Because we agree with his second argument, we confine our analysis to that argument.

### A.

We begin with some background on this issue. In its notice under Pa.R.E. 404(b), the Commonwealth alleged that Appellant harassed his neighbor in May 2015 by using a website called "Backpage" to call escorts to the neighbor's home and then calling 911 to report the activity. *See* 404(b) Notice, 6/29/21, ¶ 2. The Commonwealth alleged that during one of these incidents, Appellant "used racial slurs." *Id*. As was later admitted at trial, Appellant said: "I like to watch [n------] get locked up and more [n------] are going to get in trouble." N.T., 10/19/21, at 43. After a pretrial hearing on the issue, the trial court found that the prior conviction and its facts were "permissible to establish motive, plan, intent, preparation, knowledge and

absence of mistake" because Appellant's offenses arose out his previous supervision. *See* Order, 8/31/21, at 1 n.1.

At trial, the Commonwealth did not call anyone involved in the prior case, instead relying on Detective Pisani to testify about what Appellant did in the prior case. *See* N.T., 10/19/21, at 39-41. When Detective Pisani was asked about "what would happen when these escorts would arrive at the neighbor's house," Appellant objected on hearsay grounds but was overruled:

> [DEFENSE COUNSEL]: I'm not sure where the Commonwealth is going, sir, but my objection will be to hearsay if he attempts to repeat anything that [Appellant] said to a prostitute. There's a claim that in the reports that [Appellant] said -- used the N-word in communicating with the prostitutes. So if the prostitute says that to the officer and it's offered here, I think it's hearsay, highly inflammatory, and prejudicial. We deny it. And the prostitute herself would have to be the one to come in and say it. So I'm not sure how far he's going here, but in the anticipation that this would naturally lead there, I'm objecting anticipatorily and moving in Limine to preclude such evidence motion.
>
> [COMMONWEALTH]: Yes. Your Honor, my understanding of your Order permitted us to bring in the details of the crime for which [Appellant] was on probation and he did plead guilty to those charges.
>
> THE COURT: Overruled.

*Id*. at 41-42.

This was not the end of the matter, however. On cross-examination, Appellant clarified that Detective Pisani was not involved in the prior case. Indeed, he acknowledged that he was relying on the police report from that case for his testimony that Appellant had used the slur.

Q      Okay.  I'd like to focus your attention on the back page prostitution thing.  That involved [Appellant's neighbor].  That was the -- one of the alleged victims in that case, correct?

A      Yes.

Q      And you weren't -- were you an investigating officer there in that case?

A      I was not.

Q      Did you interview [Appellant's neighbor]?

A      I did not.

Q      Did you interview [the neighbor's wife]?

A      I did not.

Q      Did you interview any of the alleged prostitutes you testified here?

A      I did not.

Q      Do you know the names of those prostitutes?

A      They would be in some of the reports, but I don't know off the top of my head; no.

Q      Did you reach out to them before you testified in this case?

A      I did not.

Q      Well, how in the world do you know that [Appellant] said to them I like to watch [n------] get in trouble?  How do you know that?

A      It was in the report and he pled guilty to it.

Q      Who wrote the report?  Who wrote the report?

A      I believe it was Officer Coffen (ph).

Q      So -- and did he identify the declarant, the woman who said that Nik said this to her?

A      Yes.

Q      Okay.   So you came into this courtroom to repeat what somebody else wrote that somebody else told them?   That's the substance of your testimony?

A      Yes.

*Id*. at 202-04.   Later, Detective Pisani admitted he did not know whether

Appellant's use of the slur was the basis for his harassment conviction.

Q      He never acknowledged using the N-word, did he?

A      Not that I'm aware of.

Q      In fact, you're aware that he denies it to this day, correct?

A      I -- yes.

*Id*. at 212.

**B.**

Appellant reasserts his objection at trial that the Commonwealth relied

on inadmissible hearsay that he said the "n" word during his prior case.[3]

> Hearsay is defined as an out-of-court statement offered to prove
> the truth of the matter asserted.   Pa.R.E. 801(c).   Under the

_____

[3] As he acknowledged at oral argument, Appellant's evidentiary challenge is limited to his prior use of the "n" word.  Appellant does not challenge the trial court's broader pretrial Pa.R.E. 404(b) ruling about the admissibility of the facts of his prior convictions, nor that Detective Pisani was permitted to testify about the underlying facts of those convictions.  Indeed, Appellant raised no hearsay objection to Detective Pisani testifying that Appellant was convicted of false reports and harassment for calling the escorts to his neighbor's house. ***See*** N.T., 10/19/21, at 40-41.

Pennsylvania Rules of Evidence, a "statement" is defined as "a person's oral [or] written assertion, or nonverbal conduct, if the person intended it as an assertion."  Pa.R.E. 801(a) (emphasis added).  Generally, hearsay is not admissible, as it "lacks guarantees of trustworthiness fundamental to [our] system of jurisprudence."  **Commonwealth v. Smith**, 545 Pa. 487, 681 A.2d 1288, 1290 (1996).  In order to guarantee trustworthiness, the proponent of a hearsay statement must establish an exception to the rule against hearsay before it shall be admitted. **Id**.

**Commonwealth v. Wallace**, 244 A.3d 1261, 1270 (Pa. Super. 2021)

(emphasis omitted).

However, where an out-of-court statement is not admitted for the purpose of proving the truth of what was said, the hearsay rule does not bar admission of that statement.  Testimony as to an out of court statement, written or oral, is not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made.  The hearsay rule does not apply to all statements made to or overheard by a witness, but only those statements which are offered as proof of the truth of what is said.  Thus, a witness may testify to a statement made to him when one of the issues involved is whether or not the statement was, in fact, made.

**American Future Systems, Inc. v. BBB**, 872 A.2d 1202, 1213 (Pa. Super.

2005) (internal citations and quotation marks omitted).[4]

We agree with Appellant that Detective Pisani's testimony about

Appellant's use of the slur meets the definition of hearsay.  Critically,

---

[4] An appellate court's standard of review of a trial court's evidentiary rulings, including decisions on the admission of hearsay, is an abuse of discretion. **See Commonwealth v. Rivera**, 238 A.3d 482, 492 (Pa. Super. 2020).  We will not disturb an evidentiary ruling unless "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence of record." **Commonwealth v. Fitzpatrick**, 204 A.3d 527, 531 (Pa. Super. 2019).

Appellant's use of the slur is not the out-of-court statement; instead, it was the police report containing the non-testifying declarant's statement to the police about Appellant's use of the slur. Moreover, the Commonwealth admitted the out-of-court statement for the truth of the matter asserted: that Appellant used the slur. Indeed, the out-of-court statement would have no relevance to Appellant's trial other than to prove that he used the term in the prior case.

The Commonwealth nonetheless asserts that there are no hearsay problems because Appellant pleaded guilty to harassment in the prior case, thus establishing the facts of that case and relieving it of the burden of having to offer non-hearsay evidence of the contested prior bad act. We find this argument unconvincing. First, the Commonwealth does not assert that the hearsay was properly admissible under any exception to the rule against hearsay. Second, it never established that Appellant's use of the slur in the prior case was the basis for his harassment conviction. Indeed, the Commonwealth has never offered the transcript from Appellant's December 2015 guilty plea hearing showing that his harassment conviction was based on his use of the slur rather than sending the escorts to his neighbor's home. Third, and finally, even if the harassment conviction encompassed his use of the slur, the Commonwealth cites no case law for the proposition that excuses it from producing competent, non-hearsay evidence to prove that Appellant

uttered the slur.  For these reasons, we find merit in Appellant's challenge to the admission of inadmissible hearsay to prove his prior use of the racial slur.

**C.**

This does not end our inquiry, however.  An appellate court may find that an error is harmless when it finds beyond a reasonable doubt that:

> (1)    [t]he error did not prejudice the defendant or the prejudice was de minimis; or
>
> (2)    the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3)    the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Holt***, 273 A.3d 514, 540 (Pa. 2022).  The Commonwealth must prove that an error was harmless beyond a reasonable doubt; however, an appellate court may invoke the harmless error doctrine sua sponte when not addressed by the trial court or raised by the parties as it relates to this issue.  ***Id***.; ***Commonwealth v. Hamlett***, 234 A.3d 486, 492 (Pa. 2020).

After reviewing the record, we find that Appellant's prior use of the racial slur could not have contributed to the jury's verdict given the overwhelming evidence of guilt and its insignificant prejudicial effect.  First, as noted, CID conducted a forensic examination of Appellant's laptop and cell phone.  That examination established that Appellant created the fake email accounts for the ABC News and New York Times journalists.  ***See*** N.T., 10/19/21, at 241-

48.  Defense counsel conceded during his closing statement that Appellant sent the emails posing as the journalists, disputing only that Appellant had the requisite intent to be convicted of identity theft or unsworn falsification. **See** N.T., 10/21/21, at 34-37, 42.  Thus, there was no real factual dispute over Appellant's actions as to the journalists' emails, only as to his intent.

The same holds true for Appellant's creation of the fake racist email allegedly written by the probation supervisor.  For this, the Commonwealth presented the CID investigator who conducted the forensic examination and had him go through step-by-step how the email was created on Appellant's laptop.  Again, like the fake emails, defense counsel conceded that Appellant's laptop was used to alter the email from the prior case, but argued that the body of the email message might have come from a source that Appellant was unwilling to reveal.  Appellant's basis for this speculative argument, however, was a comment that he made to Detective Pisani during the execution of the search warrant when Appellant asked him if he was attempting to violate his First Amendment right and reveal the source for his story.  **See** N.T., 10/19/21, at 89-90.  In any event, as discussed, the county IT Department searched its servers and failed to find any emails with the same terms as those in the offensive email in the YC News story.

On top of that, Appellant's use of the slur in the prior case was brought up briefly during the lead detective's testimony.  **See** N.T., 10/19/21, at 43. As the Commonwealth notes, this was the only mention of the evidence, as it

did not mention Appellant's use of the slur in either its opening or closing arguments. The trial court also instructed the jury in its final charge that Appellant's prior crime was admitted for a limited purpose and not to show that he was a person of bad character or criminal tendencies. *See* N.T., 10/21/21, at 87-88. As our Supreme Court has explained, "[i]t is well settled that the jury is presumed to follow the trial court's instructions." *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016). For these reasons, we find that the trial court's error in admitting Appellant's prior use of the "n" word in the 2015 case to have been harmless.

### III. Right to Public Trial

Next, Appellant contends that the trial court violated his Sixth Amendment right to a public trial.[5] In addressing this claim, we begin by acknowledging that:

> The Sixth Amendment right to a public trial in a criminal case is binding on the states through the due process clause of the Fourteenth Amendment.

---

[5] Appellant failed to include this issue in his statement of questions involved. Such an omission generally results in waiver. *See Commonwealth v. Hodge*, 144 A.3d 170, 172 n.4 (Pa. Super. 2016) (quoting Pa.R.A.P. 2116(a)). However, "such a defect may be overlooked where [the] appellant's brief suggests the specific issue to be reviewed and [the] appellant's failure does not impede our ability to address the merits of the issue." *Werner v. Werner*, 149 A.3d 338, 341 (Pa. Super. 2016). Here, Appellant listed the issue in his Pa.R.A.P. 1925(b) statement, and the trial court addressed the issue in its Pa.R.A.P. 1925(a) opinion. Because this deficiency does not hamper our review of his claim, we review its merits.

> The Pennsylvania Constitution likewise guarantees an accused's right to a public trial. The right to a public trial is applicable to *voir dire* proceedings.
>
> * * *
>
> In determining whether the *voir dire* procedure ... violated [a defendant's] right to a public trial, we keep in mind that such right serves two general purposes: (1) to prevent an accused from being subject to a star chamber proceeding; and (2) to assure the public that standards of fairness are being observed. The public's right to attend a trial is not absolute, and exists as a guarantee of fairness in judicial conduct during criminal court proceedings. Where trial courts perceive a threat to the orderly administration of justice in their courtrooms by an unmanageable public, they may always place reasonable restrictions on access to the courtroom, so long as the basic guarantees of fairness are preserved such as by the presence of the press and the making of a record for later review.

> The question in a particular case is whether that control [over the courtroom] is exerted so as not to deny or unwarrantedly abridge ... the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.

*Commonwealth v. Phillips*, 946 A.2d 103, 109 (Pa. Super. 2008) (internal citations and quotation marks omitted).

The alleged violation stems from the way the trial court conducted jury selection, with the group *voir dire* being held in a courtroom while the individual *voir dire* was held in a nearby conference room. As a result, the trial court had caution tape put up to deter "traffic in the hallways from interfering with the selection process." Trial Court Opinion (TCO), 3/1/22, at 28. Apparently, the caution tape stayed up because on the first day of trial one of Appellant's attorneys raised a concern that the tape had remained up.

- 15 -

*See* N.T., 10/18/21, at 4. Upon hearing this, the trial court immediately directed court staff to make sure that the caution tape was removed. *Id*. at 4-5.

Appellant brought up this concern again during trial and called as a witness Christopher Boggs (Attorney Boggs), an Assistant District Attorney for Delaware County. He testified that on the second day of trial he tried to enter the trial, but a sheriff's deputy told him there were "strict orders" not to let anyone in. *See* N.T., 10/21/21, at 114-15. Later that afternoon, Attorney Boggs saw the trial judge and joked that he was not allowed into the trial, to which the judge responded with confusion and told him that he just needed to "walk around." *Id*. at 115. Attorney Boggs testified that he was unaware of anyone else that was denied access to the trial. *Id*. at 116. After the testimony, one of Appellant's attorneys related that on the first day of trial during jury selection, he saw a sheriff's deputy turn away a woman who tried to use the restroom outside the courtroom. *Id*. at 117-18. Appellant's attorneys, however, did not move for a mistrial.

After reviewing the record, we find no violation of Appellant's right to a public trial. Contrary to Appellant's claims, the trial court never closed the courtroom from the public. Instead, the trial court aimed to ensure that there was free space available outside the conference room for the potential jurors involved in individual *voir dire*, to which Appellant had no objection. *See* N.T., 10/19/21, at 393. Then, upon finding out that the caution tape used for that

- 16 -

purpose stayed up, the trial court promptly directed that the caution tape be taken down. At most, Appellant's evidence established that one member of the public (Attorney Boggs) was turned away from entering the courtroom because a sheriff's deputy misapprehended that there was to be no admittance into the courtroom. Beyond this, however, Appellant failed to show that any other members of the public were denied access to any portion of his trial; indeed, his attorneys conceded that his family was present for the entire trial. *See* N.T., 10/21/21, at 118. Thus, we will not find that Appellant's right to a public trial was violated just because one of members of the DAO's office was denied access based on the actions of a single sheriff's deputy acting on his own rather than the trial court excluding anyone from the courtroom. ***See Commonwealth v. Constant***, 925 A.2d 810, 817 (Pa. Super. 2007) (finding no violation where one member of the public, his wife, was denied permission to attend *voir dire* because of limited space).[6]

---

[6] In its Pa.R.A.P. 1925(a) opinion, the trial court remarks that it obtained video from the hallway confirming that "the only person who interacted with the Park Police Officer was ADA Boggs." TCO at 28. Because this video is not in the record, Appellant argues that a remand is necessary to determine the video's admissibility and relevance. *See* Appellant's Brief at 29. Because there is more than enough undisputed evidence in the record to deny his claim, no remand is necessary because the trial court's representation about the video plays no role in our consideration of this issue.

## IV. Suppression

Appellant next contends that the trial court erred in admitting the contents of his laptop and cell phone, both of which were seized without a warrant. The Commonwealth counters that Appellant's claim is waived because he failed to make this argument in his pretrial suppression motion. We agree.

"[A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272–73 (Pa. Super. 2006). Motions must be made to the suppression court with specificity and particularity. *Commonwealth v. Freeman*, 128 A.3d 1231, 1241 (Pa. Super. 2015). *See also* Pa.R.Crim.P. 581(D) (explaining that an omnibus pretrial motion must "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof"). Thus, when a defendant's motion to suppress does not assert specifically the grounds for suppression, he cannot later complain that the Commonwealth or the suppression court failed to address a particular theory never expressed in that motion. *See Commonwealth v. Quaid*, 871 A.2d 246, 249 (Pa. Super. 2005).

Appellant filed an omnibus pretrial motion that included three suppression motions. The first sought to suppress any evidence seized from

his house, as he argued that the search warrant lacked sufficient probable cause. *See* Omnibus Pretrial Motion, 5/26/20, ¶¶ 2-4. The second sought to suppress any evidence seized from any other search warrants. *Id*. ¶¶ 5-9. Finally, the third sought to suppress any statements that Appellant made during the execution of the warrant. *Id*. ¶¶ 10-11. Thus, none of Appellant's motions sought to suppress the electronic devices seized. Likewise, at the suppression hearing, Appellant did not move to amend his omnibus motion to argue that the devices seized without a warrant were illegally obtained. Instead, his attorneys stated that he was still moving only to suppress any evidence seized by the search warrants based on the "four corners" of the affidavit. *See* N.T., 7/28/21, at 5. The trial court then received testimony related to Appellant's suppression motion relating to statements he made to CID during the execution of the search warrant. *Id*. at 7-20.

To recap, Appellant's omnibus pretrial motion included three motions to suppress, two of which presented any evidence seized from search warrants while the third sought to suppress any involuntary statements made during the execution of the search. Then, at the suppression hearing, Appellant never moved to suppress his laptop and cell phone (as well as their contents) that CID seized without a warrant. As a result, Appellant has waived his argument for suppression that he now seeks to advance on appeal.

## V. Barred from Introducing Evidence

Appellant next claims the trial court barred him from introducing at trial a report that the IT Department's search of the county servers uncovered over 3,000 emails containing the "n" word. According to Appellant, he sought to admit this report to support his claim that the email in the YC News story was, in fact, genuine.

The record reveals, however, that the trial court never barred Appellant from introducing evidence about the report. At trial, the Commonwealth called John Becht (Becht), a Delaware County IT Department employee. He testified that after the YC News story was posted, his supervisor directed him to search the county's servers for the email in the story. *See* N.T., 10/20/21, at 43. When Becht did a search for any email that contained both the "n" word and the term "gangbang," he found no results. *Id*. at 46-47. As noted, however, Becht did get results when he did a search for the "n" word alone, but he explained that the results were mostly from testimony in transcripts when a witness's testimony included the term. *Id.* at 47.

On cross-examination, Appellant clarified that Becht's search produced an electronic report called a PST file that he gave to his supervisor. *Id*. at 51. As a result, the trial court directed Becht to download the report and give a copy to Appellant's attorneys. *Id*. at 56, 94. After Becht complied with the trial court's request, he explained that the search for the "n" word in the

county servers returned 3,152 results. *Id*. at 93-94. Not long after, being

provided with the report, one of Appellant's attorneys stated the following:

> Your Honor, I don't believe after discussing with co-counsel that we need anybody to review the records or get the records regarding this. All we need, I believe, is testimony from Mr. Becht in front of the jury regarding what he testified to earlier outside the hearing of the jury.

*Id*. at 102-03. Becht was, thus, recalled as a witness and asked by Appellant

about his search of county emails for the "n" word that produced 3,152 results.

*Id*. at 104.

As this Court has explained,

> It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "The absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal. ***Commonwealth v. Powell***, [ ] 956 A.2d 406, 423 ([Pa.] 2008); ***Tindall v. Friedman***, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated.") (citation omitted)).

***Commonwealth v. Rodriguez***, 174 A.3d 1130, 1144–45 (Pa. Super. 2017).

Contrary to Appellant's claims, the trial court never barred him from

introducing evidence about the IT Department's search of the county's servers

for emails that contained the "n" word. In fact, as noted, when offered a

digital copy of the search results, Appellant's attorneys declined reviewing the

report, opting instead to have Becht testify about the results of his search. In

so doing, Appellant never raised an objection with the trial court about its handling of the evidence in this issue. As a result, Appellant's issue is waived.[7]

## VI. Sentencing

In his final issue, Appellant raises a discretionary challenge to the trial court's sentence, arguing that the trial court abused its discretion in imposing consecutive sentences on several of his convictions that resulted in an aggregate sentence of two to four years' imprisonment.

As the Commonwealth points out in its brief, Appellant did not file a post-sentence motion for modification of sentence. As a result, because Appellant did not raise this issue in a timely post-sentence motion in the sentencing court, his discretionary challenge is waived for appellate purposes. *See Commonwealth v. Griffin*, 65 A.3d 932, 936 (Pa. Super. 2013)

---

[7] As the Commonwealth also notes, Appellant does not explain in his brief where he preserved this issue. *See* Pa.R.A.P. 2117(c) (requiring, where an issue is not reviewable on appeal unless raised or preserved below, a statement of place of raising or preservation of issues); Pa.R.A.P. 2119(e) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information"). "Our appellate courts have long held that an [appellant] who does not follow Pa.R.A.P. 2117(c) and Pa.R.A.P. 2119(e) waives the related issues due to the defects in his brief." *Young v. S.B. Conrad, Inc.*, 216 A.3d 267, 274 (Pa. Super. 2019). "[I]t is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." *Commonwealth v. Baker*, 963 A.2d 495, 502 n.6 (Pa. Super. 2008) (citations omitted).

("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted)).

What is more, Appellant has also failed to file a Pa.R.A.P. 2119(f) statement. We note that a statement under Pa.R.A.P. 2119(f) that concisely sets forth the reasons relied on for allowance of appeal with respect to the discretionary aspects of a sentence is required when a party is challenging the discretionary aspects of a sentence. **See *Commonwealth v. Eisenberg***, 98 A.3d 1268, 1275 (Pa. 2014). When a defendant fails to file a Pa.R.A.P. 2119(f) statement relative to a challenge to the discretionary aspects of his sentence and the Commonwealth objects, the challenge will be found waived. ***Id.*** at 1274. Here, because the Commonwealth objects to Appellant's failure to file the required statement requesting permission to appeal, his claim is also waived for failure to file a Pa.R.A.P. 2119(f) statement.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 9/15/2022*

- 23 -