J-S70028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYUAN SIMON | |
| Appellant | No. 1161 EDA 2014 |

Appeal from the Judgment of Sentence September 20, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0007840-2012

BEFORE:  LAZARUS, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MUNDY, J.:                **FILED DECEMBER 12, 2014**

Appellant, Tyuan Simon, appeals from the September 20, 2013 aggregate judgment of sentence of life imprisonment, imposed after he was convicted of first-degree murder, criminal solicitation, and criminal conspiracy.[1]  After careful review, we affirm.

The trial court summarized the relevant factual and procedural history of this case as follows.

> [The victim, Tyree] Whiting had an intimate relationship for years with a young lady named Victoria Graham.  In 2010, she ended the relationship and began an intimate relationship with [Appellant].  Whiting was heartbroken because he remained madly in love with her.  Whiting then

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 902(a), and 903(c), respectively.

began to gossip about [Appellant]. He told Taria Mayo-Giddings, a woman with whom [Appellant] had a long-term intimate relationship (both before and during his affair with Ms. Graham), that [Appellant] had paid Ms. Graham's rent shortly after [Appellant] told Ms. Mayo-Giddings he did not have money to contribute to hers. Whiting also seeded rumors that [Appellant] had willingly engaged in homosexual activity while serving a prison sentence, and that he may be infected with the AIDS virus. Among the people with whom [Appellant] and Whiting associated, the accusation that a man is a homosexual is one of the two worst insults one can give.

[Appellant] was furious that Whiting was gossiping and spreading rumors about him. Five days before the murder, when Ms. Mayo-Giddings confronted [Appellant] about paying rent for Ms. Graham but not her, he exclaimed, "I'm tired of this punk-a[*]s n[***]er with my name in his mouth, and I'm going to handle this tonight." He then slammed his bottle of beer on the table and stormed out to the Roo House Tavern. Shortly afterward, he returned to the neighborhood and, upon seeing Ms. Mayo-Giddings, told her, "if somebody dies tonight, it's going to be on your conscience and your hands." [Appellant] did not, however, carry out his threat that night. When Ms. Graham heard a rumor that [Appellant] said he was going to kill Whiting, she asked [Appellant] about it. [Appellant] admitted being angry with Whiting and saying he was going to kill him, but he told Ms. Graham "he didn't mean it."

…

On the night of the murder, [Appellant] and Whiting went separately to the Roo House Tavern. When Whiting arrived, he spoke to a man named Von Mims. Whiting knew Mims and [Appellant] had been incarcerated in the same prison at the same time, so he asked Mims whether [Appellant] has willingly engaged in homosexual activities while there. As Whiting spoke to him, Mims saw

[Appellant] staring at them. Minutes later, [Appellant] approached Mims when he was alone and asked, "was that n[***]er talking about me[?]"

Bruce Woods met [Appellant], Jason Jones, and Janile Clark at Roo House Taven that night. Woods was sitting opposite [Appellant] when he saw [Appellant]'s facial expression change suddenly from normal to angry and aggressive. When Woods asked [Appellant] "what's up[?]" he replied, "this rat-a[*]s n[***]er." Woods turned around to see who [Appellant] was talking about, and saw Whiting.

Woods explained [at trial] that a "rat" is a person who informs the police about the illegal activities of others. Woods stated that according to "the code of the streets, he ain't 'posed to be around here walking round. … They're a rat, they don't deserve to live," he said. "The rat got to die."

[Appellant] then left the group briefly to check his cell phone, and when he returned he declared that "he had a dime on main man head," referring to Whiting. Woods explained that "a dime" means ten thousand dollars. Woods continued, "I was like 'yeah?' He was like, 'yeah.' That's when I said, 'say no more.'" Shortly after that, Whiting left the tavern followed by Woods, who shot Whiting to death only a few blocks away.

[Appellant] left the tavern after Woods and Whiting and went to Veronica Graham's house. When he arrived, he asked if she loved him, and if she would "do anything for him." Shortly after he arrived he had a telephone conversation, during which he disguised his voice by simulating a Jamaican accent. [Appellant] told the person on the other end that "he had to get out of there. It was too hot in there." Then he asked, "did he check out[?]" The person to whom he was talking was Bruce Woods, who said there had just been a shooting in Norristown, thereby implying that he had murdered Whiting. Woods testified that he refrained from saying anything that would show he knew who

- 3 -

had been shot, because he could not know whether anyone else was within earshot of [Appellant]'s cell phone. …

Trial Court Opinion, 6/16/14, at 2-5 (internal citations omitted).

On March 1, 2013, the Commonwealth filed an information, charging Appellant with the above-mentioned offenses, as well as one count each of second-degree murder, third-degree murder, and robbery.[2] Appellant proceeded to a four-day jury trial, at the conclusion of which the jury found Appellant guilty of first-degree murder, criminal solicitation, and criminal conspiracy. The remaining three charges were *nolle prossed*. On September 20, 2013, the trial court imposed an aggregate sentence of life imprisonment without the possibility of parole.[3] That same day, Appellant filed a timely post-sentence motion.[4] On January 21, 2014, Appellant filed

_____

[2] 18 Pa.C.S.A. §§ 2502(b), 2502(c), and 3701(a)(1)(i), respectively.

[3] The trial court imposed a sentence of life imprisonment without parole for first-degree murder, as well as 20-40 years' imprisonment each for criminal solicitation and criminal conspiracy. These were to run concurrently to Appellant's life sentence for first-degree murder.

[4] Specifically, Appellant filed a premature "Post-Verdict Motion in Arrest of Judgment" two hours before he was sentenced. At sentencing, the trial court appeared to acquiesce in treating this premature filing as a post-sentence motion. *See* N.T., 9/20/13, at 37.

Furthermore, although the trial court did not dispose of Appellant's post-sentence motions until 187 days after the imposition of sentence, this does not affect our exercise of appellate jurisdiction in this case. It is axiomatic that a defendant's post-sentence motion is denied by operation of law after 120 days if the trial court does not dispose of said motion. *(Footnote Continued Next Page)*

- 4 -

an amended post-sentence motion, even though he did not petition the trial court for leave to do so, raising, among other claims, that the jury's verdict was against the weight of the evidence. *See generally* Pa.R.Crim.P. 607(A)(3). On March 26, 2014, the trial court entered an order denying Appellant's post-sentence motions. On April 16, 2014, Appellant filed a timely notice of appeal.[5]

On appeal, Appellant raises the following three issues for our review.

> 1. Did the [trial c]ourt err in admitting evidence of "prior bad [a]cts" pursuant to [Pennsylvania Rule of Evidence] 404(b) – specifically, evidence that [] Appellant had "choked" a woman in an unrelated incident by grabbing her around the neck and slamming her "through a wall" while threatening that he could "kill" her?
>
> 2. Was the evidence at trial sufficient for the jury to find [] Appellant guilty of first[-]degree murder and the related charges?

*(Footnote Continued)* ―――――――――――――

Pa.R.Crim.P. 720(B)(3)(a). However, the appeal period runs from the date the trial court's prothonotary enters an order stating the post-sentence motion is denied by operation of law. *Id.* at 720(B)(3)(c); *accord* *Commonwealth v. Khalil*, 806 A.2d 415, 419-420 (Pa. Super. 2002), *appeal denied,* 801 A.2d, 503 (Pa. 2003). As noted above, the trial court entered an order on March 26, 2014 denying Appellant's post-sentence motions, but it did not indicate they were denied by operation of law under Rule 720. Nevertheless, as Appellant filed his notice of appeal within 30 days of the trial court's March 26, 2014 order, our jurisdiction is not affected.

[5] On May 1, 2014, Appellant filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), even though the trial court did not order him to do so. On June 16, 2014, the trial court filed its Rule 1925(a) opinion.

>           3.    Was the finding of guilt for first[-]degree
>                 murder and related charges against the weight
>                 of the evidence[?]

Appellant's Brief at 4.

We address Appellant's second issue first, as the remedy for a sufficiency of the evidence claim is complete discharge rather than a new trial. **See generally Commonwealth v. Simpson**, 832 A.2d 496, 500 (Pa. Super. 2003) (citation omitted). Our standard of review regarding challenges to the sufficiency of the Commonwealth's case is well settled. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." **Commonwealth v. Patterson**, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" **Id.** (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses

and the weight of the evidence produced is free to believe all, part or none of the evidence." *Id.* (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied, Diamond v. Pennsylvania*, 135 S. Ct. (2014).

Before addressing the merits of Appellant's claim, we must address the Commonwealth's argument regarding whether Appellant has complied with Pa.R.A.P. 1925(b) to preserve this issue for our review. **See** Commonwealth's Brief at 17-19. By its text, Rule 1925(b) requires that concise statements "identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii); **see also Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa. Super. 2006) (stating "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review[]"), *appeal denied*, 919 A.2d 956 (Pa. 2007). Any issues not raised in accordance with Rule 1925(b)(4) will be deemed waived. Pa.R.A.P. 1925(b)(4)(vii). Our Supreme Court has made clear that Rule 1925(b) is a bright-line rule. **Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011). Additionally, with regard to claims pertaining to the sufficiency of the Commonwealth's evidence, we have stated as follows.

> In order to preserve a challenge to the sufficiency of the evidence on appeal, **an appellant's Rule**

- 7 -

**1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient**. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (internal quotation marks and citations omitted; emphasis added).

In the case *sub judice*, Appellant filed a Rule 1925(b) statement, even though the trial court did not order him to do so. Appellant's Rule 1925(b) statement only repeats the question presented in his brief, "[w]as the evidence at trial sufficient for the jury to find [Appellant] guilty of first[-]degree murder and the related charges?" Appellant's Rule 1925(b) Statement, 5/1/14, at ¶ 2(ii). Based on our cases, we are constrained to conclude that Appellant has not complied with Rule 1925(b) because his statement fails to specify which elements of which offenses the Commonwealth did not prove beyond a reasonable doubt. *See Garland*, *supra* (concluding that Garland's bald Rule 1925(b) statement that "[t]he evidence was legally insufficient to support the convictions[]" was non-compliant with Rule 1925(b)); *Commonwealth v. Williams*, 959 A.2d 1252, 1256 (Pa. Super. 2008) (concluding that Williams' bald Rule 1925(b) statement that "[t]here was insufficient evidence to sustain the charges of Murder, Robbery, VUFA no license, and VUFA on the streets … [t]hus

- 8 -

[Appellant] was denied due process of law[]" was non-compliant with Rule 1925(b)). Therefore, we deem Appellant's sufficiency claim waived.[6]

We next address Appellant's third issue on appeal, that the jury's verdict was against the weight of the evidence.[7] We begin by noting, "[a] claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Landis***,

---

[6] We note that it does not make a difference that the trial court did not order Appellant to file a Rule 1925(b) statement. ***See***, ***e.g.***, ***Commonwealth v. Nobles***, 941 A.2d 50, 52 (Pa. Super. 2008) (finding one of the Commonwealth's issues on appeal waived for not being raised in its Rule 1925(b) statement and declining to "encourage 'sand bagging' by counsel if they are allowed to quickly file a Rule 1925(b) statement and then claim that nothing is waived because the Rule 1925(b) statement was not in response to a formal request" from the trial court); ***accord Commonwealth v. Snyder***, 870 A.2d 336, 341 (Pa. Super. 2005) (concluding, "[i]f we were to find that because he was not ordered to file a 1925(b) statement, he has not waived the issues he neglected to raise in it, we would, in effect, be allowing appellant to circumvent the requirements of the Rule[]"); ***but see Commonwealth v. Antidormi***, 84 A.3d 736, 745 n.7 (Pa. Super. 2014) (concluding, without citation to our prior cases, that "[b]ecause the trial court did not order the filing of a Rule 1925(b) statement, we will not conduct a waiver inquiry … [as t]he requirements of Rule 1925(b) are not invoked in cases where there is no trial court order directing an appellant to file a Rule 1925(b) statement[]"), *appeal denied*, 95 A.3d 275 (Pa. 2014).

[7] We note that Appellant's weight claim was first raised in his amended post-sentence motion filed on January 21, 2014. However, the record reveals that the trial court directed the Commonwealth to answer said motion, and the trial court's March 26, 2014 order denying Appellant's post-sentence motions indicated the trial court heard oral argument on them. As the trial court considered the motion on the merits, we decline to find this issue waived. ***See, e.g***, ***Commonwealth v. Moore***, 567 A.2d 701, 704 (Pa. Super. 1989) (declining to find issues waived "where the trial court had considered an amended post-trial motion on the merits of the issue without granting permission for the defendant to file *nunc pro tunc*[]"), *appeal denied*, 575 A.2d 563 (Pa. 1990) .

89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted). An argument that the jury's verdict was against the weight of the evidence concedes that the evidence was sufficient to sustain the convictions. ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, ***Lyons v. Pennsylvania***, 134 S. Ct. 1792 (2014). Our Supreme Court has admonished that "[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). Instead, "the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Id.*** (internal quotation marks and citation omitted). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice …." ***Id.***

As an appellate court, it "is not [our role] to consider the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Morales***, 90 A.3d 80, 91 (Pa. 2014) (citation omitted). An argument that the jury's verdict was against the weight of the evidence remains "[o]ne of the least assailable reasons for granting … a new trial …." ***Id.*** (citation omitted). "Thus, only where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based

on the weight of the evidence be upset on appeal." *Id.* (citation omitted; emphasis in original).

In this case, Appellant argues that the verdict was against the weight of the evidence because Woods and not Appellant shot the victim. Appellant's Brief at 18. Appellant continues that although Woods testified that Appellant hired him to kill the victim, Woods "admitted on cross-examination that he never received any money from [] Appellant." *Id.* at 18-19. Finally, Appellant argues that "[t]he Commonwealth produced no witness that could credibly confirm that [] Appellant 'hired' Mr. Woods to commit a killing on the date at issue." *Id.* at 19.

It is axiomatic that the jury is the ultimate finder of fact at trial.

> [T]he veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.

*Commonwealth v. Alicia*, 92 A.3d 753, 761 (Pa. 2014) (citation omitted). Likewise, "[t]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Feese*, 79 A.3d 1101, 1122 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1007 (Pa. 2014).

In this case, the jury was free to find Woods's trial testimony credible and resolve any inconsistencies in the Commonwealth's favor. Additionally, the jury was free to infer that Appellant intended for Woods to kill the victim for him. *See Commonwealth v. Horne*, 89 A.3d 277, 286 (Pa. Super. 2014) (concluding the weight of the evidence claim could not prevail as "the jury resolved the inconsistencies among the testimonies as it saw fit and reached a verdict[]"). As an appellate court, we will not reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Serrano*, 61 A.3d 279, 289 (Pa. Super. 2013) (citation omitted). Based on these considerations, we conclude the trial court did not commit a palpable abuse of discretion in deciding the jury's verdict was not against the weight of the evidence. *See Morales*, *supra*.

We next proceed to Appellant's first issue on appeal. Appellant avers that the trial court erred when it permitted the Commonwealth to introduce evidence of Appellant's other bad acts, in violation of Pennsylvania Rule of Evidence 404(b). Appellant's Brief at 11-14. We begin by noting our standard of review regarding evidentiary issues.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or

> misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Fischere***, 70 A.3d 1270, 1275 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted), *appeal denied*, 83 A.3d 167 (Pa. 2013).

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. [***Id.*** at] 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. ***Commonwealth v. Powell***, 598 Pa. 224, 956 A.2d 406, 419 (2008).

> [***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009), *cert. denied*, ***Sherwood v. Pennsylvania***, 559 U.S. 1111 (2010)]. The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts. ***Commonwealth v. Stanley***, 484 Pa. 2, 7, 398 A.2d 631, 633 (1979); ***Commonwealth v. Constant***, 925 A.2d 810, 821 (Pa. Super. [2006]), *appeal denied*, 594 Pa. 675, 932 A.2d 1285 (2007).

***Commonwealth v. Ross***, 57 A.3d 85, 98-99 (Pa. Super. 2012) (*en banc*), *appeal denied*, 72 A.3d 603 (Pa. 2013). Although Rule 404(b) is colloquially known as a rule prohibiting evidence of prior bad acts, our cases have held

that, consistent with the text of Rule 404, its exceptions may permit the Commonwealth to introduce evidence of **subsequent** bad acts. ***Commonwealth v. Wattley***, 880 A.2d 682, 685 (Pa. Super. 2005) (citation omitted), *appeal dismissed*, 924 A.3d 1203 (Pa. 2007).

In the case *sub judice*, the trial court permitted the Commonwealth to present the following evidence.

> Two or three days [after the murder] Ms. Mayo-Giddings "told [Appellant] he's living a lie," and that "if you can't be real with nobody else, you got to at least be real with yourself," and asked him to go with her to be tested for HIV. [Appellant] became so angry that he grabbed her by the neck, choked her, slammed her into the wall of their apartment, and said, "I could kill you today, and nobody would even know."

Trial Court Opinion, 6/16/14, at 3 (internal citations omitted); ***see also*** N.T., 6/26/13, at 106-108. Mayo-Giddings further testified that she had never seen Appellant act like that and "his eyes was [sic] real red … and [h]e looked like a devil." N.T., 6/26/13, at 108. The Commonwealth argues that the trial court properly admitted this evidence, as it went to motive and Appellant's state of mind. Commonwealth's Brief at 16.

After careful review, of the certified record, we agree with the Commonwealth that the trial court did not abuse its discretion. Mayo-Giddings testimony went directly to Appellant's motive for having the victim killed. Her testimony showed Appellant's rage, anger, and hostility towards anyone questioning his HIV status and sexual orientation. The

- 14 -

Commonwealth also presented other evidence showing this motive, Mayo-Giddings testimony supported the Commonwealth's theory. The Commonwealth presented the testimony of Jerome Kemp, Appellant's friend, who testified that Appellant was upset that the victim "kept going around spreading rumors, calling [Appellant] all types of fa[***]ts, saying that he, you know -- he mess with them boys." N.T., 6/26/13, at 251. We further agree that the probative value of Mayo-Giddings testimony was not outweighed by its prejudicial effect. ***See, e.g.***, ***Commonwealth v. Hairston***, 84 A.3d 657, 670 (Pa. 2014) (stating evidence admissible under Rule 404(b) where "[t]he prior bad acts admitted by the Commonwealth explained what would have otherwise appeared to be inexplicable conduct toward [the victims]"), *cert. denied*, ***Hairston v. Pennsylvania***, 135 S. Ct. 164 (2014). Therefore, we conclude the trial court did not abuse its discretion in permitting the Commonwealth to introduce this evidence under Rule 404(b)(2). ***See Fischere***, ***supra***.

Based on the foregoing, we conclude that all of Appellant's issues on appeal are either waived or devoid of merit. Accordingly, the trial court's September 20, 2013 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

Judge Strassburger files a concurring memorandum in which Judge Lazarus joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/12/2014