J-S31028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF |
|---|---|
| Appellee | PENNSYLVANIA |
| v. | |
| WILLIAM JOSEPH KEMP, | |
| Appellant | No. 993 MDA 2014 |

Appeal from the Judgment of Sentence entered January 29, 2014,
in the Court of Common Pleas of Lycoming County,
Criminal Division, at No(s): CP-41-CR-0000525-2012

BEFORE: BENDER, P.J.E., ALLEN, and WECHT, JJ.

MEMORANDUM BY ALLEN, J.:          **FILED JUNE 08, 2015**

William Joseph Kemp ("Appellant") appeals from the judgment of sentence imposed after a jury found him guilty of third degree murder, two counts of aggravated assault, possession of an instrument of crime, and two counts of recklessly endangering another person.[1] We affirm.

The trial court summarized the pertinent facts and procedural history as follows:

> In the evening of February 13, 2012, Kristen Radcliffe, Michael Updegraff, and Thomas Schmitt were drinking at the Fifth Avenue Tavern in Williamsport. Updegraff and Radcliffe, who were boyfriend and girlfriend, got into a disagreement. Radcliffe left the Tavern and walked away down Fifth Avenue, ending up outside [Appellant's] apartment. Twenty to thirty

---

[1] 18 Pa.C.S.A §§ 2502(c), 2702(a)(1) and (4), 907(a), and 2705.

minutes later, [Appellant] gave Radcliffe a ride to the residence she shared with Updegraff at 1017 Franklin Street.

[Appellant entered the residence with Radcliffe. Updegraff was upstairs and Schmitt was sitting on a couch downstairs.] When Updegraff came downstairs and saw [Appellant], he asked [Schmitt] who the hell [Appellant] was. [Schmitt responded that he did not know and that Ms. Radcliffe had brought him]. Radcliffe explained that [Appellant] had given her a ride home. Updegraff told [Appellant] to get out of his house but [Appellant] refused to leave. Radcliffe apologized for Updegraff's behavior and told [Appellant] that he should just leave.

Updegraff grabbed [Appellant] and pushed or shoved him into a wall and then out the door. Updegraff and Schmitt followed [Appellant] outside and part way down the driveway. Updegraff stopped at the end of his van [parked in the driveway] and Schmitt continued walking for several feet so that he was approximately midway between the end of the van and [Appellant's] vehicle, which was parked on Franklin Street. Throughout, Updegraff and Schmitt continued yelling at [Appellant] to keep going, get off the property and leave.

[Appellant] continued walking quickly down the driveway to his vehicle. Instead of leaving, however, [Appellant] opened the door of his vehicle and grabbed his handgun. He turned back towards Updegraff and Schmitt and began firing shots as he moved towards them. One shot struck Schmitt in the neck and another was a contact or near contact shot to the back of his head.

Updegraff and Radcliffe tried to wrest the firearm away from [Appellant]. While doing so, they punched and kicked [Appellant] repeatedly. Various neighbors saw and/or heard the gunshots and commotion and called 911. Within minutes, the police arrived and took [Appellant] into custody. [Schmitt died as a result of his wounds].

Trial Court Opinion, 6/9/14, at 1-2; N.T., 9/9/13, at 152; N.T., 9/11/13, at 83.

Appellant was charged with the aforementioned crimes, and a jury trial commenced on September 9, 2013. On September 17, 2013, the jury returned its guilty verdicts.

Following a hearing on January 29, 2014, the trial court sentenced Appellant to a term of imprisonment of twenty (20) to forty (40) years. Appellant filed a timely post-sentence motion on February 7, 2014, which the trial court denied by opinion and order dated June 9, 2014. This timely appeal followed. The trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. Appellant complied, and on September 5, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), stating that it had addressed all of Appellant's issues in its June 9, 2014 opinion.

Appellant raises ten issues for our review:

I. Whether the [trial court] erred regarding the admissibility of the term "execution?"

II. Whether the [trial court] erred in Granting Commonwealth's Motion to Preclude Dr. Guazzardi's testimony?

III. Whether the [trial court] erred in its rulings regarding the admissibility of testimony by Dr. Alhashimi, the testimony of Dr. Dowell, the use of the word "concussion", and Comments by the Commonwealth regarding Appellant's fabrication of testimony?

IV. Whether the [trial court] erred in Denying Appellant's request for a mistrial due to Dr. Hamel's care for a juror during trial?

- 3 -

V.     Whether the [trial court] erred in Granting Commonwealth's Motion to Preclude the admissibility of Updegraff's Criminal Record?

VI.    Whether the [trial court] erred in permitting the Commonwealth's introduction of Appellant's Statements at 12/24/09 Clinton County C&Y Hearing?

VII.   Whether the [trial court] erred in Denying Appellant's request for Voluntary Manslaughter/Heat of Passion Jury Instruction?

VIII.  Whether the Evidence presented by the Commonwealth was insufficient to disprove self-defense?

IX.    Whether the Verdict of Guilty for Each Offense was Against the Weight of the Evidence?

X.     Whether the sentence was excessive?

Appellant's Brief at 8.

In his first issue, Appellant challenges the trial court's decision to preclude the testimony of Appellant's expert witness, Dr. Eric Vey, from testifying that Schmitt was not shot "execution style." Appellant's Brief at 34-36.

> The admissibility of evidence is within the sound discretion of the trial court, and this Court will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014).

Appellant argues that the trial court erred when it granted the Commonwealth's motion *in limine*. Appellant's Brief at 34-36. Specifically,

- 4 -

Appellant argues that because in its closing arguments, the Commonwealth stated that Appellant "executed" Schmitt, Appellant should have been permitted to provide expert testimony to contradict the argument that the shooting was "execution style." *Id*.

It is well-settled that "[t]he purpose of expert testimony is to assist in grasping complex issues not within the ordinary knowledge, intelligence and experience of the jury." *Commonwealth v. Mendez*, 74 A.3d 256, 262 (2013) *quoting* *Commonwealth v. Zook*, 615 A.2d 1, 11 (Pa. 1992) (citations omitted).

After Appellant indicated his intent to have Dr. Vey testify that the shooting was not "execution style", the Commonwealth, on February 6, 2013, filed a motion *in limine* to preclude such testimony on grounds that whether the shooting was "execution style" was not the subject of expert testimony. The trial court agreed, explaining: "By Dr. Vey's own account, execution style shooting was not a forensic pathology term [but] a media construct. As such, it was not beyond the knowledge of the average layperson; it was a term created for the average layperson by the media." Trial Court Opinion, 6/9/14, at 4. Accordingly, the trial court granted the Commonwealth's motion *in limine*.

Upon review, we find no abuse of discretion in the trial court's determination that what constitutes an "execution style" killing was not within the area of expertise of a forensic pathologist, and was not a subject beyond the capability of a lay jury to assess. Moreover, in its case in chief,

the Commonwealth did not elicit any testimony that the shooting was "execution style" to require rebuttal testimony to refute such a claim.

Although in its closing argument, the Commonwealth did state that the victim was "executed," and Appellant promptly objected, our case law is clear that "[a] prosecutor is permitted latitude to make argument with oratorical flair." *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (2009). N.T., 9/17/13, at 85; 89-91. Moreover, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom." *Id*. Here, as the trial court explained, "there [was] forensic testimony that the gunshot wounds were contact and/or near contact or within half an inch, I believe ... And I do agree that it's fair to comment on the evidence in both sides." N.T., 9/17/13, at 91. We find no abuse of discretion in the trial court's ruling.

Appellant's second and third issues are interrelated. Therefore, we will address them together. Appellant argues that the trial court erred when it granted the Commonwealth's motion to preclude the testimony of Appellant's toxicology expert witness, Dr. Lawrence Guazzardi, and the testimony of Dr. Richard Dowell, a neuropsychological expert. Appellant's Brief at 37-41.[2] Specifically, Appellant sought to have Dr. Guazzardi testify

---

[2] Appellant also challenges the trial court's decision to preclude the testimony of Dr. Alhashimi. Appellant does not direct this Court to precisely where in the record or in the eight volumes of the notes of testimony from trial this testimony was excluded. *Commonwealth v. LaCava*, 666 A.2d
*(Footnote Continued Next Page)*

to Appellant's blood alcohol level at the time of the offenses, and how Appellant's alcohol consumption, in addition to a head injury incurred after the shooting when subdued by Mr. Updegraff, would have affected Appellant's memory of the offenses. Appellant sought to present such expert testimony in an effort to explain statements he made to police after the incident that he did not remember the shooting, and to provide an explanation for the gaps in his recollection when he testified on his own behalf, so that the jury would understand that he was not feigning memory loss for self-serving purposes. N.T., 9/12/13, at 177; 9/16/13, at 46, 71, 129-140. To that end, Appellant sought to have Dr. Guazzardi, a toxicology expert, testify that "both alcohol intoxication, at the level present in this

_(Footnote Continued)_ _____

221, 234–35 (Pa. 1995) (failure to identify in the record where error occurred, with proper citation to the record, constitutes waiver of claim). Nevertheless, our independent review of the record indicates that at trial, on September 16, 2013, the parties stipulated to the introduction of Dr. Alhashimi's expert report, and reached an agreement as to which portions the jury should be permitted to hear and which portions should be redacted. N.T., 9/16/13, at 36-44.

To the extent that Appellant argues that he was precluded from including the portion of Dr. Alhashimi's report indicating that Appellant suffered a concussion, the trial court explained that Dr. Alhashimi never diagnosed Appellant as actually having suffered a concussion but only opined that Appellant suffered a "possible concussion" which did not meet the requisite certainty for expert testimony. Trial Court Opinion, 6/9/14, at 16. Appellant does not dispute this determination, and we find no abuse of discretion. *See Commonwealth v. Gonzalez*, 109 A.3d 711 (Pa. Super. 2015) (where the expert's opinion is grounded "on mere possibilities instead of a reasonable degree of certainty" such an opinion is "nothing more than conjecture or surmise").

matter, or a concussion, can cause transient loss of memory and inappropriate thought process and conduct", and that Appellant's alcohol consumption prior to the offenses affected his ability to recall or recollect the circumstances surrounding the shooting. Appellant's Brief in Opposition to Commonwealth's Motion, 2/22/13. Additionally, Appellant sought to introduce the testimony of Dr. Dowell that, as a result of the head injury or concussion suffered by Appellant during his altercation with Mr. Updegraff, Appellant suffered memory loss resulting in memory gaps and inconsistent recollection of the events surrounding the offenses. *Id*.

On March 8, 2013, the Commonwealth filed a motion to preclude such expert testimony, which the trial court granted. In the order granting the Commonwealth's motion to preclude the testimony of Dr. Guazzardi, the trial court explained:

> The expert testimony of Dr. Lawrence Guzzardi and Dr. Richard Dowell, Jr. shall not be admitted for the purpose of explaining [Appellant's] statements, lack of statements, and/or the manner in which the statements were made to police, as the credibility [of] Appellant and his statements are to be assessed by the jury and are not within the domain of expert witnesses. See ***Commonwealth v. Crawford***, 718 A.2d 768 (Pa. 1998) (finding that expert testimony to explain revival of repressed memory and how it affected a witnesses' statement and his credibility was within the exclusive province of the jury and should have been excluded) see also, ***Commonwealth v. Gallagher***, 547 A.2d 355 (Pa. 1998); ***Commonwealth v. Dunkle***, 602 A.3d 830 (Pa. 1992); ***Commonwealth v. Constant***, 925 A.2d 810 (Pa. Super. 2007). Expert testimony on intoxication, however, is not precluded from being presented to show that [Appellant] was incapable of forming a specific intent to kill. ***See Commonwealth v. Blakeney***, 946 A.2d 645 (Pa. 2008).

Trial Court Order, 3/15/13, at 1-2.

We find no abuse of discretion in the determination by the trial court that the question of whether Appellant's memory was affected by his alcohol use and subsequent head injury was a subject which was within the ordinary knowledge, intelligence and experience of the jury. Moreover, to the extent that Appellant argued "alcohol *could have* caused memory loss and affected [Appellant's] statements to police," this Court has held that where the expert's opinion is grounded on "mere possibilities instead of a reasonable degree of certainty", such an opinion is "nothing more than conjecture or surmise." ***Commonwealth v. Gonzalez***, 109 A.3d 711 (Pa. Super. 2015) (upholding trial court's decision to exclude evidence that a diagnosis of depression and anxiety in the medical records 'may affect' [the victim's] perception and recollection where expert failed to opine that the alleged depression or anxiety impaired her perception or recall of the critical events at the heart of the case); Appellant's Brief in Opposition to Commonwealth's Motion in Limine, 2/22/13 at 4.

Finally, even if such testimony was erroneously precluded, it did not constitute reversible error.

> In deciding whether this error necessitates the grant of a new trial, we must consider whether the error was harmless under the circumstances. An error is harmless only if the reviewing court concludes beyond a reasonable doubt that it could not have contributed to the verdict. It is the burden of the Commonwealth to prove, beyond a reasonable doubt, that the error did not contribute to the verdict. If there exists a

reasonable possibility the error contributed to the conviction it cannot be deemed harmless.

There are three circumstances under which our Court has recognized that an error is harmless: (1) the error was not prejudicial to the defendant, or any prejudice suffered by the defendant was de minimis; (2) erroneously admitted evidence was cumulative with respect to other properly admitted evidence; or (3) the prejudicial effect of the error is so insignificant in comparison to the other trial evidence that it is clear beyond a reasonable doubt that the error could not have contributed to the fact-finder's decision.

***Commonwealth v. Brown***, 52 A.3d 1139, 1182 (Pa. 2012).

Here, any prejudicial effect from the preclusion of expert testimony that Appellant's alcohol consumption and head injury incurred after the shooting impacted his ability to recollect the events after the fact, was *de minimis,* and would not have contributed to the jury's decision, given the overwhelming evidence Appellant's guilt. At trial, the Commonwealth presented the testimony of Mr. Updegraff and Ms. Radcliffe that Appellant shot the victim at close range, which was corroborated by testimony from various neighbors who witnessed the shooting, as well as both the Commonwealth's and Appellant's experts who agreed that the victim was shot at very close range. Accordingly, the preclusion of expert testimony that Appellant suffered a concussion after the shooting was so insignificant in comparison that any error by the trial court in excluding that testimony could not have contributed to the verdict. Moreover, when Appellant testified on his own behalf, he described to the jury the injuries to his head, and repeatedly testified that he suffered a loss of recollection of the shooting

incident because of a "beating" by Mr. Updegraff. N.T., 9/16/13, at 46, 71. For the foregoing reasons, we conclude that Appellant is not entitled to relief.

In his fourth issue, Appellant argues that the trial court erred in denying his request for a mistrial after the Commonwealth's forensic pathology expert, Dr. Marianne Hamel, rendered aid to a juror who became ill. Appellant's Brief at 42. Specifically, Appellant references an event that occurred while Dr. Hamel was testifying about the injuries suffered by the victim, during which graphic autopsy photographs were displayed to the jury. N.T., 9/9/13, at 103. The record reflects that one of the jurors experienced a "problem breathing" and became "light headed and pale." *Id*. at 105. Dr. Hamel immediately went to the juror's assistance, and the trial court ordered a recess and released the rest of the jurors to the jurors' lounge. *Id*. EMS personnel arrived shortly thereafter and determined that the juror had suffered a "vasovagal reaction" or "emotional physical response" to the photographs. *Id*. at 106. The juror stated that he could not continue to serve if more photographs were to be displayed, and both parties agreed to the release of the juror. Appellant's counsel then requested a mistrial, asserting that the jury's observation of Dr. Hamel providing medical aid would increase their perception of her credibility. *Id*. at 107.

The trial court denied the request for a mistrial, explaining: "I don't think what occurred was such that it would deprive [Appellant] of a fair trial.

I think it's a different situation than if the doctor were, in fact a party. The doctor in this particular case is ... a witness, and the medical care that ... she provided was nothing more than sitting there and talking to [the juror], reassuring him that he was okay, and I don't think under those circumstances that it's ... such that would cause the jurors to decide the case not on the facts and circumstances or to unfairly prejudice [Appellant]."

*Id*., at 108-109. The trial court, however, did provide the jury with the following curative instruction:

> Okay, we're back on the record after that series of events. Fortunately he's fine, but as you know we excused him in light of the circumstances.
>
> One thing that I do have to caution you on ... I don't really like to do this, but we have to do this in court. Obviously, as a result of what happened, our witness, Dr. Hamel, went to the assistance of [the juror]. You have to remember when you decide this case and decide what occurred, that can't factor into your decision the fact that she went and helped. You have to decide it based on the other factors that we talk about.

*Id*. at 110.

"[T]he trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion." *Commonwealth v. Judy*, 978 A.2d 1015, 1019–1020 (Pa.

- 12 -

Super. 2009) (quotation marks and citations omitted). "The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Id*.

We find no abuse of discretion in the trial court's decision not to grant a mistrial. Dr. Hamel did not provide any treatment to the juror other than to speak with him and reassure him, and the trial court issued an appropriate curative instruction to the jury instructing them not to allow Dr. Hamel's rendering of aid to the juror to factor into their decision making. The jury is presumed to have followed the court's instructions. *Commonwealth v. Baker*, 614 A.2d 663, 672 (Pa. 1992). Thus, any prejudice that may have resulted from Dr. Hamel's actions was adequately cured by the trial court's instructions.

In his fifth issue, Appellant argues that the trial court erred when it precluded him from presenting Mr. Updegraff's criminal record to the jury. Appellant's Brief at 45-48. Our Supreme Court has held that "as an evidentiary matter ... when self-defense is properly at issue, evidence of the victim's prior convictions involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/propensity evidence, as indirect evidence that

- 13 -

the victim was in fact the aggressor. ***Commonwealth v. Mouzon***, 53 A.3d 738, 741 (Pa. 2012).[3]  However, "[o]nly those past crimes of the victim that are similar in nature and not too distant in time will be deemed probative, with the determination as to similar nature and remoteness resting within the sound discretion of the trial judge." ***Id***.

Here, the trial court concluded, and Appellant does not dispute, that he had no knowledge of Updegraff's criminal record prior to the offenses.  The trial court reasoned that "Mr. Updegraff's convictions were too remote in time", explaining that  Updegraff's convictions occurred between 2001 and 2004, and that the seven year length of time that had elapsed since Mr. Updegraff's last conviction rendered them too remote to be probative.  ***See*** Trial Court Order, 8/12/13.  We find no abuse of discretion in this determination.  Moreover, to the extent that Appellant, through introduction of Updegraff's criminal record, sought to apprise the jury of Mr. Updegraff's violent tendencies, the record is clear that upon Appellant's initial entry the house with Ms. Radcliffe, Mr. Updegraff reacted in a hostile and aggressive manner, Mr. Updegraff himself testifying at trial that he "grabbed hold" of Appellant and "forcefully ... removed him onto my porch," that "pushing and

---

[3] While the trial court in its order denying Appellant's motion stated that "the victim in this case was not Updegraff," the record indicates that Mr. Updegraff was in fact one of the victims — in addition to finding Appellant guilty with regard to the deceased victim, Mr. Schmitt, the jury also found Appellant guilty of the reckless endangerment of Mr. Updegraff.

shoving" ensued and Mr. Updegraff punched Appellant in the chest and in the chin, by which the jury was well aware that Mr. Updegraff was capable of violence. N.T., 9/9/13, at 152-156.

In his sixth issue, Appellant argues that the trial court erred in permitting the Commonwealth to introduce statements Appellant made at an December 2009 dependency hearing on a petition filed by the Clarion County Children and Youth Services, at which Appellant, explaining why he carries a gun and knives, stated: "Well, honestly, because I have a right to; and I feel like I should exercise it. And what's the point in having the guns and the permit to carry if you're not going to make use of it. ... If I don't have the .45 on my hip, I would have a knife in my pocket at almost all times." Trial Court Opinion, 6/9/14, at 13-14; Appellant's Brief at 49-51.

On September 6, 2013, the trial court entered an order precluding the Commonwealth from introducing Appellant's statements in its case in chief. However, the Commonwealth was not precluded from introducing the statements for purposes of rebuttal, and during trial, the trial court ultimately permitted the Commonwealth to introduce the challenged statements as rebuttal, on grounds that Appellant "opened the door" to such testimony. N.T., 9/16/13, at 15. Specifically, the trial court explained:

> During trial, [Appellant's] counsel asked [Appellant's] former girlfriend, Kristen Smith, why [Appellant] kept his firearm in his automobile. Ms. Smith testified that [the reason Appellant kept a gun in his car was because] the weapon was not permitted in her residence. This opened the door for the Commonwealth to

rebut this evidence with [Appellant's] own statements about why he kept guns in his vehicle.

Trial Court Opinion, 6/9/14, at 14. Accordingly, the trial court permitted the Commonwealth to rebut the testimony of Ms. Smith by introducing Appellant's statements that he felt he had a right to carry a gun, and routinely did so. N.T., 9/16/13, at 33-35.

The admission of rebuttal testimony is within the sound discretion of the trial court, and the appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. *Commonwealth v. Ballard,* 80 A.3d 380, 401 (Pa. 2013). We find no abuse of discretion in the trial court's determination that Appellant's prior statements were permissible to rebut the inference that if Ms. Smith had permitted Appellant's gun to be kept in her house, Appellant would not have had the gun with him in the car. This claim fails.

In his seventh issue, Appellant argues that the trial court erred when it denied his request for a "heat of passion" jury instruction. Appellant's Brief at 52-53. Appellant does not include in his brief any citation to the portion of the notes of testimony (which encompassed six days of trial and eight volumes of testimony), where he requested such a jury instruction. *See LaCava*, 666 A.2d at 234–35 (failure to identify in the record where the error occurred, with proper citation to the record, constitutes waiver of claim). We are able to discern, however, that prior to closing arguments, Appellant requested a "heat of passion" instruction as well as an instruction that Appellant acted under an "unreasonable belief" that the killing was

- 16 -

justified, to allow the jury to consider a voluntary manslaughter verdict. N.T., 9/17/13, at 2-3. The trial court agreed to instruct the jury on unreasonable belief/voluntary manslaughter, instructing the jury when a defendant is guilty of voluntary manslaughter. 18 Pa.C.S.A § 2503(b); N.T., 9/17/13, at 129-131. However, the trial court denied Appellant's request for a "heat of passion" instruction.

Appellant argues that the trial court erred when it denied his request for a "heat of passion" instruction. Appellant's Brief at 52-53. Pennsylvania's Crimes Code provides:

> (a)  General rule.--A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
>> (1)   the individual killed; or
>>
>> (2)   another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

18 Pa.C.S.A. § 2503(a). "[F]or purposes of section 2503(a), 'sudden and intense passion' encompasses emotions such as anger, rage, sudden resentment, or terror that renders the mind incapable of reason." **Commonwealth v. Arrington**, 86 A.3d 831, 850 (Pa. 2014), *quoting* **Commonwealth v. Browdie**, 671 A.2d 668 (Pa 1996).

> Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective test: whether a reasonable man who was confronted with the provoking events would become impassioned to the extent that his mind was incapable of cool reflection. To reduce an

- 17 -

intentional blow, stroke, or wounding resulting in death to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion without time to cool, placing the [defendant] beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

*Commonwealth v. Hutchinson*, 314-315 (Pa. 2011) (citations and internal quotations omitted).

Our Supreme Court has made clear that "a trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict. Therefore, only where an instruction is requested and only if the evidence supports 'heat of passion' voluntary manslaughter, is an instruction thereon required." *Commonwealth v. Browdie*, 671 A.2d 668, 674 (1996). *See also Commonwealth v. Solano*, 906 A.2d 1180, 1190 (Pa. 2006) ("a trial court should not instruct a jury on legal principles which bear no relationship to the evidence presented at trial").

Here, the trial court, rejecting Appellant's request for a "heat of passion" instruction, explained that there was not evidence to support a theory that at the time of the killing Appellant was acting under an intense passion. We find no abuse of discretion in the trial court's rejection of Appellant's request for a "heat of passion" instruction.

"[A]bsent evidence of negligence or accident, a 'heat of passion' voluntary manslaughter charge is improper where the victim is not the

person who provoked the defendant." ***Commonwealth v. Ragan***, 743 A.2d 390 (Pa. 1999) (citations omitted). The trial court explained:

> [Appellant] relies on the fact that he and Updegraff got into a verbal argument and Updegraff assaulted [Appellant] in the residence and on the porch. The victim, however, was Mr. Schmitt, not Updegraff. [Appellant] also was not trying to kill Updegraff when he shot Schmitt.
>
> The only acts or attributes that [Appellant] attributed to Schmitt were that he had "crazy eyes" and he was running down the driveway towards him. This is not sufficient provocation for a reasonable man to become so impassioned that he was incapable of cool reflection and would just start shooting at Schmitt. Therefore, [Appellant] was not entitled to a heat of passion instruction.

Trial Court Opinion, 6/9/14, at 18.

We agree with the trial court's analysis that if the Appellant was provoked, it would have been as a result of the actions not of the deceased victim, but of Mr. Updegraff, who physically removed Appellant from his residence, and then punched Appellant several times and scuffled with him in the driveway. Furthermore, although Appellant testified at trial that he only retrieved his gun after he heard either Mr. Updegraff or Mr. Schmitt make a comment about a gun, leading Appellant to believe that they might be armed, and that Mr. Schmitt "charged" at Appellant as though in an effort to "tackle" him, we find no abuse of discretion in the trial court's determination that these circumstances did not rise to such a level as to warrant a jury instruction that Appellant acted under a "sudden and intense passion resulting from serious provocation" that rendered him incapable of

- 19 -

reason, and his mind incapable of cool reflection. N.T., 9/16/13, at 67, 74. ***Hutchinson, supra***.

In his eighth issue, Appellant argues that the evidence presented by the Commonwealth was insufficient to disprove self-defense. Appellant's Brief at 54-55. "When the defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving such a defense beyond a reasonable doubt. [T]he Commonwealth cannot sustain its burden of proof solely on the factfinder's disbelief of the defendant's testimony." ***Commonwealth v. Rivera***, 983 A.2d 1211, 1221 (Pa. 2009). "The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1143 (Pa. Super. 2009); 18 Pa.C.S.A. § 505.

In the present case, the trial court, determining that the Commonwealth had indeed met its burden of disproving Appellant's self-defense claim, explained:

> Although [Appellant] asserted that he acted in self-defense, the Commonwealth presented ample evidence to prove otherwise. [Appellant] was not in imminent danger of death or serious bodily injury when he shot the victim, he was not free

from fault in provoking the difficulty which culminated in the slaying and he violated a duty to retreat.

The evidence presented by the Commonwealth showed that [Appellant] was told to leave the residence but he refused to do so. An argument erupted between Updegraff and [Appellant], and Updegraff grabbed [Appellant] and physically removed him from the residence. Updegraff and Schmitt then escorted [Appellant] partway down the driveway. Updegraff stopped at the end of his van and Schmitt stopped halfway between the end of the van and [Appellant's] vehicle, which was parked facing the wrong way on Franklin Street. [Appellant] proceeded to his vehicle. It appeared that the altercation was over and [Appellant] was going to leave. Instead of leaving, however, [Appellant] grabbed his pistol and pulled the slide. He admittedly ascertained the situation. He turned around towards Schmitt and began firing shots and walking in Schmitt's direction.

The testimony of neighbors who heard the commotion and looked outside supported Updegraff's testimony that he stopped at the end of his van and Schmitt stopped about halfway between the van and [Appellant's] vehicle. The neighbors' testimony and the location of the shell casings also refuted [Appellant's] claims that Schmitt ran down the driveway towards him before he began shooting and Schmitt charged him from a three-point stance in the yard.

Schmitt suffered a contact gunshot wound to the neck and a contact or near contact wound to the back of the head. Updegraff testified that when the first of those shots hit Schmitt he turned around toward Updegraff and fell to his knees, which is supported by the location of the wounds on different sides of Schmitt's body.

Although [Appellant] claimed he heard someone say the word gun when he was on the porch, the police arrived while Updegraff and Radcliff were trying to get [Appellant's] gun away from him and they did not find any other gun.

[Appellant] argued that since a knife with the blade open and exposed was found near the victim's feet after the incident, it supports his claim that the victim was trying to kill him and he was acting in self-defense. [Appellant], though, never saw the

victim wielding a knife, and Updegraff testified that he and Schmitt had been working on a window in the house and the knife could have fallen into the yard when they were working on the window. Moreover, the jury instruction on self-defense requires that the person against whom deadly force was used either display or use a weapon readily or apparently capable of lethal use. There was absolutely no evidence that Schmitt displayed or used the knife in question.

In summary, the Commonwealth's evidence showed [Appellant] provoked or continued the difficulty by refusing to leave Updegraff's property, he did not reasonably believe he was in imminent danger of death or serious bodily injury because he never saw Schmitt in possession of a gun or the knife, and he violated a duty to retreat by going after Schmitt instead of driving away or running away after Updegraff and Schmitt stopped in the driveway and [Appellant] safely reached his vehicle. Therefore, the Commonwealth established that [Appellant] did not act in self-defense and the evidence was sufficient to support the jury's verdicts.

Trial Court Opinion, 6/9/14, at 18-20.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find no error in the trial Court's determination that the testimony presented by the Commonwealth was sufficient to demonstrate that Appellant provoked or continued the use of force, that Appellant did not reasonably believe that he was in danger of death or serious bodily injury, and that Appellant had a duty to retreat and the retreat was possible with complete safety. As such, the evidence was sufficient to disprove Appellant's self-defense claim, and Appellant's sufficiency challenge fails.

In his ninth issue, Appellant argues that the verdicts were against the weight of the evidence.

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Diggs*, 949 A.2d 873, 879–80 (Pa. 2008) (internal citations omitted).

In support of his weight of the evidence challenge, Appellant simply repeats his earlier argument that "the evidence was insufficient to meet the Commonwealth's burden of disproving Appellant's claim of self-defense." Appellant's Brief at 56-57. Such an assertion constitutes a challenge not to the weight of the evidence, but to the sufficiency of the evidence, which we have already addressed. Moreover, Appellant provides no further discussion or any relevant authority with regard to his weight of the evidence challenge, thus precluding us from any effective analysis or review of this claim. As a result, we find Appellant's weight of the evidence claim waived. *See* Pa.R.A.P. 2119. *See also Commonwealth v. Mercado*, 649 A.2d 946, 954 (Pa. Super. 1994) (stating that failure to provide support for an issue may result in waiver of the claim). To the extent, however, that

Appellant is arguing that the trial court should have reweighed the evidence to conclude that Appellant acted in self-defense, as explained above, we have already concluded that Appellant did not satisfy the requisites for justification because the evidence demonstrated that he continued the use of force or could have retreated safely. Our determination that Appellant's claim of self-defense was not supported effectively renders meritless his challenge to the weight of the evidence.

In his tenth issue, Appellant argues that his sentence was manifestly excessive. Specifically, Appellant argues that the trial court imposed an excessive sentence without appropriately considering mitigating factors such as Appellant's expressions of remorse. Appellant has properly invoked this Court's jurisdiction, complying with the four-part test set forth in **Commonwealth v. Prisk**, 13 A.3d 526 (Pa. Super. 2011), which requires an appellant challenging the discretionary aspects of his sentence to file a timely post-sentence motion, comply with Pa.R.A.P. 2119(f), file a timely notice of appeal, and set forth a substantial question. **See Commonwealth v. Gonzalez**, 109 A.3d 711 (Pa. Super. 2015) (an excessive sentence claim in conjunction with an assertion that the court did not consider mitigating factors raises a substantial question). We therefore proceed to address the merits of this claim.

Appellant argues that, at the sentencing hearing, he clearly expressed remorse for his actions, specifically "ask[ing] Mr. Schmitt's family for

forgiveness" and stating that "[t]o know that [Mr. Schmitt] died because of my actions ... I regret that." N.T., 1/29/14, at 27. Appellant contends, however, that when the trial court placed the reasons for its sentence on the record, the trial court failed to consider his expressions of remorse, stating: "I tend to agree with the prosecution that you haven't demonstrated any remorse." *Id*. at 44. Additionally, Appellant argues that the trial court failed to appropriately consider factors such as his efforts at rehabilitation and his actions in assisting other inmates.

Our review of the record belies Appellant's assertions that the trial court failed to appropriately take mitigating factors into consideration. At the sentencing hearing, the trial court, which had the benefit of a pre-sentence investigation, heard statements from members of the victims' families, as well as from Appellant's family and Appellant himself, and in rendering its sentence, considered the impact of the crimes on the victims, Appellant's age, employment history, educational attainment, family circumstances, prior criminal record, rehabilitative needs, and efforts to assist others in the prison community, as well as the particular circumstances of the crimes and the impact on the community. N.T., 1/29/14, at 41-48.

While the trial court noted that it did not believe Appellant's expressions of remorse, we have held that the sentencing court is "in the best position to measure factors such as the nature of the crime, the

defendant's character, and the defendant's display of remorse, defiance, or indifference." ***Commonwealth v. Mouzon***, 828 A.2d 1126, 1128 (Pa. Super. 2003). Here, the trial court appropriately fulfilled its function, stating that it was aware of Appellant's positive traits, and even struggled to reconcile the dichotomies of Appellant's character, remarking: "I'm somewhat perplexed. I have to take into account my observations of you. I'm somewhat perplexed. By that I mean I'm confused because it's almost like I see two different people. There's that one person who's helping other people out, the good Samaritan, who your employer, who other people are coming to your ... assistance and they talk about what a good man you are; and yet on the other hand, it conflicts with some of the things you do. It's almost like you have two different faces." N.T., 1/29/14, at 45.

Upon careful review, it is clear that the trial court took seriously its function to consider all relevant sentencing factors and to assess Appellant's character and demeanor in making its sentencing determination. As explained above, we accord great weight to the decision of the trial court because it is in the best position to review the appellant's character, defiance or indifference, and the overall effect and nature of the crimes. ***Mouzon, supra***. We find no merit to Appellant's contention that the sentencing court considered the relevant sentencing factors in such a manner that a manifest

abuse of discretion occurred. We therefore affirm Appellant's judgment of sentence.[4]

Judgment of sentence affirmed.

P.J.E. Bender joins the Memorandum.

Judge Wecht concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2015

---

[4] In his brief, Appellant presents an additional two-page argument that the trial court erred in preluding his motion to limit the testimony of his knife expert, Michael Doane. Appellant's Brief at 43-44. Although this issue was raised in Appellants Pa.R.A.P. 1925(b) statement, it was not included in his statement of questions presented on appeal. Therefore we find it waived. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").